**ANTONIA M. APPS**
**REGIONAL DIRECTOR**
**Tejal D. Shah**
**Michael D. Paley**
**Daniel Loss**
**Yitzchok Klug**
**Attorneys for Plaintiff**
**SECURITIES AND EXCHANGE COMMISSION**
**New York Regional Office**
**100 Pearl Street**
**Suite 20-100**
**New York, NY 10004-2616**
**(212) 336-5571 (Loss)**
**LossD@sec.gov**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | **COMPLAINT** |
| **Plaintiff,** | **23 Civ. 5347** |
| -against- | |
| **WILSON BASTON (A/K/A CHANON GORDON),** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against

Defendant Wilson Baston (a/k/a Chanon Gordon) ("Baston"), alleges as follows:

**SUMMARY**

1.      This matter involves a Ponzi-like scheme conducted by Baston, a convicted felon

who used the alias "Chanon Gordon" to conceal his true identity and criminal history while raising

millions of dollars in investments from dozens of victims.  Since at least 2018, Baston solicited more

than $10 million in investments based on the false representation that his purported business, the

Gordon Management Group ("GMG"), would use investor funds for real estate-related transactions and repay investors, with substantial interest, using the profits from such transactions.

2.      In fact, contrary to Baston's representations, at many times, Baston did not use investors' funds as promised and instead used a substantial portion of the funds to pay for unrelated expenses and to make payments to other investors in a Ponzi-like manner.

3.      In many instances, Baston issued promissory notes to investors that memorialized their investments in GMG.  Baston raised at least approximately $4 million through transactions involving notes.  Pursuant to these notes and related documents, Baston often represented that he and GMG would use investors' funds to facilitate real estate transactions through (i) the advancement of closing costs to third party real estate purchasers or (ii) the making of a down payment to secure a sales contract on a particular property and resell it to a third party purchaser. Baston typically promised to repay investors their principal with a high rate of interest equal to up to 25% of the principal within mere weeks of their investments.  In some instances, Baston also purported to pledge collateral to the investors that he either did not own or significantly overvalued.

4.      Baston also offered investment contracts in some cases, in which he agreed to pay investors a percentage of net profits (with a guaranteed minimum) on the relevant real estate transaction, in addition to a fixed rate of interest on their principal.

5.      To carry out his scheme, Baston used bank accounts in the name of GMG.  For example, Baston directed that investors transmit their funds to GMG accounts and accessed GMG accounts to use such funds for cash withdrawals, personal expenses, and repayments to other investors.

6.      More recently, with little cash left in GMG accounts, Baston resisted repaying investors their promised principal, interest, and/or guaranteed share of purported transaction profits.  After providing various excuses for delays in repayments, Baston stopped responding to

communications from several investors, who have lost large amounts of money as a result of Baston's fraudulent conduct.

## VIOLATIONS

7.     By virtue of the foregoing conduct and as alleged further herein, Baston has violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

8.     Unless Baston is restrained and enjoined, he will engage in the acts, practices, transactions, and courses of business set forth in this Complaint or in acts, practices, transactions, and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

9.     The Commission brings this action pursuant to the authority conferred upon it by Securities Act Sections 20(b) and 20(d) [15 U.S.C. §§ 77t(b) and 77t(d)] and Exchange Act Section 21(d) [15 U.S.C. § 78u(d)].

10.    The Commission seeks a final judgment: (a) permanently enjoining Baston from violating the federal securities laws and rules this Complaint alleges he has violated; (b) ordering Baston to disgorge all ill-gotten gains he received as a result of the violations alleged here and to pay prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)]; (c) ordering Baston to pay civil money penalties pursuant to Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)]; (d) permanently prohibiting Baston from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C.

3

§ 78u(d)(2)]; (e) permanently prohibiting Baston from participating directly or indirectly in the offer or sale of securities, except for transactions in his own personal account, pursuant to Exchange Act Section 21(d)(5) [15 U.S.C. § 78u(d)(5)]; and (f) ordering any other and further relief the Court may deem just and proper.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over this action pursuant to Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa].

12.    Baston, directly and indirectly, has made use of the means or instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

13.    Venue lies in this District under Securities Act Section 22(a) [15 U.S.C. § 77v(a)] and Exchange Act Section 27 [15 U.S.C. § 78aa].  Baston may be found in, is an inhabitant of, or transacts business in the Southern District of New York, and certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within this District.  For example, multiple investors were located within this District and initiated financial transactions relating to their investments from this District.  GMG also purportedly had an office location in Manhattan based on documentation provided to some investors.

## DEFENDANT

14.    **Baston**, age 61, is a resident of Brooklyn, New York.  In 2008, Baston was convicted of 17 counts of mail fraud and wire fraud in connection with his operation of a Ponzi-like scheme that involved the recruitment of investors through false promises of guaranteed short-term, high rates of return on purported investments in distressed properties.  Baston does not hold any securities licenses and is not registered with the Commission in any capacity.

## OTHER RELEVANT ENTITIES

15.     **GMG** is the name of two limited liabilities companies formed in Connecticut (in 2015) and New Jersey (in 2017) for the ostensible purpose of conducting real estate business.  While using the alias Chanon Gordon – the name of a real person who is listed in public records as managing member of the GMG entities – Baston held himself out as the principal of GMG when dealing with investors.  Baston used bank accounts in the name of the GMG entities to accept and disburse investor funds as part of the scheme alleged herein, notwithstanding that he is not a signatory on such accounts.  In or around February 2023, the New Jersey GMG entity's status as a limited liability company was revoked for failing to file an annual report for two consecutive years. GMG entities purportedly had places of business at relevant times in various locations, including Manhattan, Brooklyn, Newark, New Jersey, and Bloomfield, Connecticut.

## FACTS

### I.     BACKGROUND ON BASTON

16.     In 2008, Baston was convicted of 17 counts of mail fraud and wire fraud that stemmed from his operation of "Will James Equity Partners," a company that was purportedly in the business of purchasing distressed properties and reselling them for a profit.  In reality, however, Baston used Will James Equity Partners as a front to facilitate a scheme to defraud investors out of millions of dollars (the "Prior Baston Scheme").

17.     As part of the Prior Baston Scheme, Baston offered promissory notes in which he promised to pay interest rates as high at least 25%, along with investors' principal balance, within short periods of time.  Initially, in order to make the promised repayments, Baston used the investment money of other victims, and not any proceeds from the actual purchase and sale of properties.  Later, once victims invested larger sums of money, Baston stopped paying the agreed-upon interest and did not return the investors' payments of principal.  Through the Prior Baston

Scheme, Baston obtained more than $22 million from at least 235 victims.

18.     In August 2008, Baston was sentenced to 135 months in prison for the Prior Baston Scheme.  He was released from prison in around March 2017.

## II.     BASTON'S GMG SCHEME

19.     Since at least 2018, Baston has used the alias Chanon Gordon – the actual name of GMG's principal – to solicit investments in GMG.

20.     Baston solicited investments both from acquaintances (who knew him by his alias) and other members of the public, including people who learned of him through word-of-mouth.

21.     Baston offered investors various types of promissory notes, pursuant to which he promised to repay investors their principal amount of investment and a high interest rate of up to 25% of the principal within a short period of time, often days or weeks following the investments.

22.     By using the alias Chanon Gordon instead of his real name, Baston knowingly or recklessly concealed his actual identity and criminal history from prospective investors, and also made it falsely appear that he had real estate experience associated with the real Gordon that Baston lacked.

23.     When soliciting investments, Baston touted his purported expertise in identifying undervalued properties and "flipping" – or re-selling – the sales contracts to third parties, as well as his supposed expertise in identifying opportunities to loan closing cost fees to real estate purchasers for a high return and little risk.

24.     If prospective investors had known that Baston was in fact a convicted felon who spent years in prison for the Prior Baston Scheme, they likely would not have invested with GMG because Baston's background and track record were important considerations in their decisions to invest.

25.     In addition to using a false identity, Baston falsely represented to investors that their

money would be used for GMG's business, including in many cases for specific types of real estate transactions.

26.    For example, at times, Baston falsely claimed pursuant to promissory notes and related documentation, as well as in conversations with investors, that the investments would be used to fund closing costs for a specific (but unidentified) real estate closing.

27.    At other times, Baston falsely claimed in promissory notes and related documentation, as well as in conversations with investors, that investments would be used for the down payment on the purchase of a specific identified property.

28.    For some transactions where investor funds were supposed to be used for the down payment on the purchase of an identified property, public records show no sale took place at any time following the dates of the investments.

29.    In some promissory note transactions, the documentation did not specifically identify how GMG would use investor funds, but investors understood based on their communications with Baston that he would use the funds in furtherance of GMG's real estate business, which Baston described as involving the purchase, renovation, and sale of real property.

30.    But contrary to Baston's representations, Baston and GMG in fact often used money raised from investors to pay back other investors and for other purposes unrelated to the operation of a legitimate real estate business.

31.    For example, out of $425,000 in investor deposits associated with seven selected note transactions between November 2018 and February 2022, at minimum $290,196, or 68%, of the funds were misappropriated through Ponzi-like repayments, cash withdrawals, car payments, and other expenditures unrelated to the stated purpose of the investments, as set forth in more detail with respect to Investor A, Investor B, and Investor C below.

32.    For some deals, in addition to issuing a promissory note, Baston would enter into an

agreement with the investor pursuant to which he represented that he would pay the investor a percentage of the net profits on the assignment of a sales contract to a third party, which he guaranteed would equal at least some specified amount.

33.    Pursuant to some of the relevant promissory notes, Baston purported to pledge certain properties as collateral, but subscribed falsely inflated values for the property. Additionally, while the notes claimed that the properties belonged to the borrower, who was identified as Baston's alias, Chanon Gordon, Baston himself did not possess ownership interests in the properties.

34.    In order to facilitate his fraud and encourage larger investments from his victims, Baston at times initially paid back the principal and interest he had promised and, where applicable, the guaranteed amount of purported net profits from the claimed transactions.

35.    However, to make those initial payments, Baston often used money from other investors, rather than the proceeds from real estate transactions.

36.    Because investors received these positive returns early on, they at times chose to roll over their invested funds into new investments and/or to invest additional sums of money in Baston's GMG Scheme.

37.    Eventually, Baston stopped paying a number of investors their principal, agreed-upon interest and, where applicable, guaranteed net profits, contrary to his representations.

38.    By at least 2019, Baston failed to make principal and interest payments associated with numerous transactions. Nevertheless, Baston continued to solicit new investments based on the false representation that he would repay the borrowed principal along with a high rate of interest, while knowing or recklessly disregarding that he would not be able to make the promised payments.

39.    When questioned by investors, Baston made various excuses for failing to return their funds, including for example, by claiming that he was suffering from multiple bouts with

COVID-19 or other health problems and falsely claiming that GMG's bank accounts were hacked or the target of malicious activity.

40.     Baston provided certain investors fabricated text messages purportedly with bank representatives in an attempt to deflect responsibility for his non-payments.

41.     As of the present, Baston has failed to pay promised principal and interest on numerous notes pursuant to which he raised millions of dollars.  For example, out of a subset of approximately $3.5 million that Baston raised from seven investors in approximately 60 note transactions from October 2018 to February 2022, those investors have suffered aggregate out-of-pocket losses of principal in the amount of at least $1.3 million.

## II.     MISAPPROPRIATION OF INVESTOR A'S INVESTMENTS

42.     From around June 2021 through February 2022, Investor A and her spouse invested more than $1.3 million with GMG pursuant to more than two dozen note agreements.

43.     Investor A made these investments based on solicitations from Baston, who Investor A knew by the alias, Chanon Gordon.

44.     Although Investor A believed that she was communicating with "Gordon," the phone number that she used for "Gordon" in fact belonged to Baston.  Unbeknownst to Investor A, the physical appearance of the person she met in person as "Gordon" matched that of Baston, not the real Gordon.

45.     On approximately August 19, 2021, Investor A made a $35,000 investment in GMG through an entity that she and her spouse used as an investment vehicle (the "Investor A Entity"). In exchange for the investment, Investor A received a promissory note pursuant to which "Gordon" – *i.e.*, Baston – promised to repay the $35,000 in principal, along with interest of $6,500, no later than August 27, 2021.

46.     The promissory note and related documentation provided that GMG would use the

$35,000 contributed by Investor A solely to "complete a specific closing" for the purchase of an unidentified property and that the funds would "be held and remain in escrow" until the closing was completed.

47.     As instructed by Baston, on August 19, 2021, Investor A wire transferred $35,000 from the Investor A Entity to a bank account belonging to GMG ("GMG Account-1").  Prior to the deposit, GMG Account-1 had a balance of only $2,072.

48.     On the very same day, rather than escrow Investor A's funds as promised, Baston used Investor A's money to (i) make a $15,000 payment to BMW of Manhattan and (ii) make a $20,000 Ponzi-like payment to another investor.

49.     Although Baston initially made his promised payments to Investor A, who introduced Baston to other investors, Baston stopped making timely payments to Investor A by around March 2022, and last made any payment in December 2022.

50.     To date, Investor A has lost, on an out-of-pocket basis, more than $250,000 from her investments with Baston, largely relating to transactions documented by promissory notes.

### III.    MISAPPROPRIATION OF INVESTOR B'S INVESTMENTS

51.     Investor B and Investor B's spouse, who reside in Manhattan, were introduced to Baston through an existing investor, Investor A.

52.     Like Investor A, Investor B knew Baston by his alias, Chanon Gordon, and used a phone number to communicate with "Gordon" that actually belonged to Baston.

53.     On approximately October 12, 2021, Investor B purchased a $51,000 note from Baston.  The promissory note – purportedly signed by "Chanon Gordon" – and related documentation provided that GMG would use the $51,000 solely to "complete a specific closing" for the purchase of an unidentified property; that the funds would "be held and remain in escrow" until the closing was completed; and that Investor B would receive back the principal along with

interest for a total payment of $56,000, immediately upon completion of the closing, but in any event within no more than ten business days.

54.     The promissory note was purportedly secured by collateral consisting of the property located at 237 St. James Place in Brooklyn, New York.  The note identified the collateral as an asset of the borrower ("Chanon D. Gordon"), but in fact it was owned by an LLC in which GMG held only a partial interest and neither Baston nor the real Chanon Gordon owned any direct interest. The note also falsely inflated the value of the collateral property by approximately 40% compared to a sale price just weeks earlier.

55.     In accordance with Baston's instructions, on approximately October 12, 2021, Investor B wired $51,000 to GMG Account-1 from a bank branch located in Manhattan.  At the time of the transfer, GMG Account-1 had a balance of only $17,668.  Approximately one hour after receiving the funds, rather than escrow the investment as represented, Baston – unbeknownst to Investor B – used Investor B's money, along with the prior account balance, to make two transfers of principal and interest totaling $60,000 to an earlier investor, Investor A.

56.     Baston and GMG would have been unable to make the $60,000 payment to Investor A, without Investor B's investment.

57.     On or about October 29, 2021, Investor B agreed to roll over the principal and interest that would have been due on the October 12, 2021 note, and to transfer an additional approximate $4,000 to GMG, in connection with a new note in the nominal amount of $60,000, which was to be repaid with 20% interest by December 22, 2021.

58.     On or about January 25, 2022, Investor B again agreed to roll over most of the principal and interest that would have been due on the October 29, 2021 note into a new $65,000 note, which was to be repaid with 20% interest by March 15, 2022.

59. The promissory notes and related documentation for the October 29, 2021 and January 25, 2022 investments represented that Investor B's funds were to be used by GMG solely toward the down payment for the purchase of specific identified properties in Brooklyn, New York.

60. The documents memorializing the October 29, 2021 and January 25, 2022 investments provided that GMG would secure the contract of sale for the subject properties and assign the contracts to third-party purchasers in excess of the stated sales contract prices. In addition to promising to pay principal and interest, as set forth in the promissory notes, Baston represented that GMG would pay Investor B 20% of the net profits from these transactions (equal to a guaranteed amount) upon the close of the sales.

61. However, contrary to Baston's representations, there is no indication that the subject properties were actually for sale at the time of Investor B's investments, and no sales of the properties have since taken place.

62. Baston and GMG did not pay Investor B as promised. Out of the $55,000 out-of-pocket principal that Investor B invested in connection with the three note transactions – most of which went to pay Investor A in a Ponzi-like manner – Investor B ultimately received back only $7,000 in January 2022.

63. Throughout the spring, summer, and fall of 2022, Investor B asked Baston for explanations as to why Investor B had not received the remaining promised payments of principal, interest, and profits. In response, Baston offered a number of excuses, including moving office space, not having his phone on him, and purported multiple bouts with COVID-19.

64. Although Baston continued, at first, to promise to pay Investor B, he never did so, and Investor B has not received any repayments since January 2022.

## IV.    MISAPPROPRIATION OF INVESTOR C'S INVESTMENTS

65.    In approximately October 2021, Investor C met Baston, who was using the alias "Chanon Gordon."

66.    Investor C communicated with the person he believed to be "Gordon" using a phone number that in fact belonged to Baston.  And unbeknownst to Investor C, the physical appearance of the person he met in person as "Gordon" matched that of Baston, not the real Gordon.

67.    On approximately February 9-10, 2022, through an entity that Investor C used as an investment vehicle, Investor C made a $75,000 investment in GMG based on solicitations from Baston.

68.    In exchange for the investment, Investor C received a promissory note and related documentation providing that GMG would use Investor C's $75,000 solely to "complete a specific closing" for the purchase of an unidentified property; that the funds would "be held and remain in escrow" until the closing was completed; and that Investor C would receive back the $75,000 principal along with interest of $15,000 on or before February 17, 2022.

69.    On February 9, 2022, Investor C made two wire transfers totaling $37,000 to a certain GMG bank account ("GMG Account-2") as a partial deposit toward his $75,000 investment.

70.    Prior to these transfers, GMG Account-2 had a balance of at most $4,428.

71.    On the same date, rather than use the funds from Investor C as promised, GMG used Investor C's money to make a $30,000 payment to another investor in a Ponzi-like manner. This payment could not have been made without the funds from Investor C.

72.    On February 10, 2022, Investor C made an additional wire transfer into GMG Account-2 in the amount of $28,000, to complete his $75,000 investment.

73.    Prior to this deposit, GMG Account-2 had a balance of $9,348.

74.     Rather than use Investor C's funds as promised, Baston made a $25,000 Ponzi-like payment to Investor A using Investor C's $28,000 deposit.

75.     Investor C did not receive the payment of principal and interest as promised.

76.     Although Baston explained, in substance, that GMG had problems with financing the deal relating to Investor C's investment, Investor C had understood from Baston that GMG would be obligated to repay the funds from the business's general profits even if the subject deal was not completed.

77.     To date, Investor C has received back no more than $20,500 out of his $75,000 investment, resulting in an out of pocket loss of at least $54,500.

## FIRST CLAIM FOR RELIEF
### Violations of Securities Act Section 17(a)

78.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 77.

79.     Baston, directly or indirectly, in the offer or sale of securities and by the use of the means or instruments of transportation or communication in interstate commerce or the mails, (1) knowingly or recklessly has employed one or more devices, schemes or artifices to defraud, (2) knowingly, recklessly, or negligently has obtained money or property by means of one or more untrue statements of a material fact or omissions of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (3) knowingly, recklessly, or negligently has engaged in one or more transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchaser.

80.     By reason of the foregoing, Baston, directly or indirectly, has violated and, unless enjoined, will again violate Securities Act Section 17(a) [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
### Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder

81.      The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 77.

82.      Baston, directly or indirectly, in connection with the purchase or sale of securities and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, knowingly or recklessly has (i) employed one or more devices, schemes, or artifices to defraud, (ii) made one or more untrue statements of a material fact or omitted to state one or more material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or (iii) engaged in one or more acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

83.      By reason of the foregoing, Defendant, directly or indirectly, has violated and, unless enjoined, will again violate Exchange Act Section 10(b) [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently enjoining Baston and his agents, servants, employees and attorneys and all persons in active concert or participation with him from violating, directly or indirectly, Securities Act Section 17(a) [15 U.S.C. §77q(a)] and Exchange Act Section 10(b) and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5(b)];

**II.**

Ordering Baston to disgorge all ill-gotten gains he received directly or indirectly, with pre-judgment interest thereon, as a result of the alleged violations, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

**III.**

Ordering Baston to pay civil monetary penalties under Securities Act Section 20(d) [15 U.S.C. § 77t(d)] and Exchange Act Section 21(d)(3) [15 U.S.C. § 78u(d)(3)];

**IV.**

Permanently prohibiting Baston from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Securities Act Section 20(e) [15 U.S.C. § 77t(e)] and Exchange Act Section 21(d)(2) [15 U.S.C. § 78u(d)(2)];

**V.**

Imposing a conduct-based injunction pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)], prohibiting Baston from participating in the offer or sale of securities, except for transactions in his own personal accounts; and

**VI.**

Granting any other and further relief this Court may deem just and proper.

## JURY DEMAND

The Commission demands a trial by jury.

Dated:  New York, New York
        June 23, 2023

                                        /s/ Antonia M. Apps
                                    ANTONIA M. APPS
                                    REGIONAL DIRECTOR
                                    Tejal D. Shah
                                    Michael D. Paley
                                    Daniel Loss
                                    Yitzchok Klug
                                    Attorneys for Plaintiff
                                    SECURITIES AND EXCHANGE COMMISSION
                                    New York Regional Office
                                    100 Pearl Street
                                    Suite 20-100
                                    New York, NY 10004-2616
                                    (212) 336-5571 (Loss)
                                    LossD@sec.gov